Baltimore and Ohio Railroad Company et al.,
Appellants, *v.* Bond et ux.

Argued October 6, 1942. Before SCHAFFER, C. J.;
DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Vincent M. Casey,* of *Margiotti, Pugliese & Casey,*
with him *Samuel Greer,* for appellants.

*Lee C. McCandless,* with him *James E. Marshall,* of
*Marshall & McCandless,* for appellees.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, November
23, 1942:

Jacob Hite, the owner of a farm in Butler County, on April 19, 1881, granted to a railroad company a right of way over part of his land. Whatever ownership now exists in the right of way is vested in one of the plaintiffs, The Pittsburgh and Western Railroad Company. The Baltimore and Ohio Railroad Company is the operating company through rights acquired by it from the first named.

Lulu Mae Bond, one of defendants, is a daughter of Jacob Hite and co-owner with others of the farm and the reversion in the right of way. She and her husband, the other defendant, occupy the farm.

Alleging that defendants were interfering with a telegraph line erected on the right of way, plaintiffs filed this bill to enjoin further interference. Defendants answered, that plaintiffs had abandoned the right of way, had removed their tracks therefrom, that the poles and wires of the telegraph line are on the property without right or license and that they belong, not to the plaintiffs, but to the Western Union Telegraph Company.

The court granted a preliminary injunction, which was subsequently dissolved, the chancellor entering a final decree that the plaintiffs "do not now have and did not have at the date this action was instituted, either jointly or severally, any right, in, upon or over that certain tract of land . . . known as the Jacob Heid farm, under and by virtue of the terms, conditions and provisions of the grant of right of way . . .". The chancellor, in view of his conclusion, should have dismissed the bill. From the decree entered plaintiffs appeal.

There can be no question that the right of way was abandoned, so far as operating a railroad upon it is concerned. This is admitted. A new branch some distance away has been built to facilitate operation. Both companies passed resolutions of abandonment. The Interstate Commerce Commission issued an order authorizing abandonment. The tracks were torn up and removed and a bridge carrying them across a stream on or near defendants' property was blown up. Plaintiffs never intend

to operate a railroad on the right of way. What they do claim is the right to have continued on the land a telegraph line owned by another corporation.

While the record is very sketchy, and the evidence anything but satisfactory as to how the telegraph line was established, it is sufficiently clear, that the line was set up on the right of way by the Western Union Telegraph Company, and that it maintains the poles and wires, of which latter there are four, three used by the operating company for train directing purposes, and occasionally when not so used, by the Telegraph Company for its business, the fourth wire being used exclusively by it, with the privilege of its use by the operating Railroad Company in emergencies.

The proposition advanced to us by the plaintiffs is, that the Telegraph Company has the right to maintain its line on the right of way, because they use some of the wires for railroad operation. We are unable to come to this conclusion.

The grant was made for a nominal money consideration "and in further consideration that the said road is located through my grounds." The holding part of the grant is "To have and to hold the said rights and privileges to the use of said company so long as the same shall be required for the use and purpose of said road in as full perfect and ample a manner as may be necessarily required for the purpose hereby intended." From the foregoing language it is clear, that the intent and purpose of the. grant was, that a railroad should be located and operated through the grantor's land, advantaging his property, and when the railroad ceased to operate, the grant should terminate. This being so, it cannot be kept alive for the benefit of the Telegraph Company, notwithstanding the use of some of its facilities for railroad purposes. The fact that some of its telegraph wires are so used can have no effect, so far as permanency of occupation is concerned, under the circumstances here presented and the language of the grant.

In principle the case is ruled by *Riefler & Sons v. Wayne S. W. P. Co.*, 232 Pa. 282, 81 A. 300. In that case, an easement was granted which was incidental to a canal and when the canal ceased to exist, it was held that the easement altogether ceased.

The decree of the court below is affirmed, and it is directed to add to the decree a clause affording a reasonable time to remove the poles and wires, and then dismissing the bill. Costs to be paid by appellants.